UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON DIVISION

| | |
|---|---|
| WENDELL ELZA, ) | |
| ) | |
| Appellant, ) | Civil Action No. 6: 05-339-DCR |
| ) | |
| V. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | **MEMORANDUM OPINION** |
| ) | **AND ORDER** |
| Appellee. ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is currently pending for consideration of Appellant Wendell Elza's Appeal for an Order to Vacate, Alter or Amend the bankruptcy court's Order granting summary judgment to the United States. [Record No. 1] Because it appears that the bankruptcy court has misinterpreted the *res judicata* effect of the prior civil judgment, this Court will grant the relief sought by the Appellant and direct that the entry of summary judgment be vacated, with proceedings to continue in bankruptcy court consistent with this opinion.

**I.    BACKGROUND**

On November 19, 2003, this Court entered judgment against Wendell Elza and Denham & Lewis Processing, Inc., a/k/a Denham and Lewis, in the civil action styled: *United States v. Denham & Lewis et al.*, Case No. 6:01-cv-504-DCR (E.D. Ky.).  This judgment followed a determination that the Debtor and D&L were liable for 301 violations of the False Claims Act in connection with claims submitted for coal purchased by the United States Department of Defense.  The claims for payment were  alleged to be false or fraudulent based on two schemes.

First, it was alleged that the Debtor and D&L knowingly supplied coal from unauthorized mines. Second, the United States contended that the Debtor and D&L supplied coal that did not meet the quality specifications in the applicable contracts. The Court found Elza liable on the first theory and the jury reached the same result on the second.

The jury awarded the United States $2,914,589.39, plus costs. After judgment was entered, the United States began enforcement proceedings against the Debtor. However, its collection efforts were unsuccessful as Elza had transferred substantially all his assets to other companies and trusts under his control. The United States then sought and was granted relief voiding those fraudulent transfers.

Approximately two weeks after this Court entered its order voiding the transfers, Elza, Denham & Lewis, Ruby Coal Co. and another related company (Teal, Inc.) filed for protection under chapter 7 of the Bankruptcy Code. On December 2, 2004, the United States, pursuant to section 523(a) of the Bankruptcy Code, filed a complaint against the Debtor to prevent discharge of the Judgment. [Adv.Pro.Dkt. No. 1] The Debtor filed his answer to the complaint and a counterclaim against the United States on January 6, 2005. [Adv.Pro.Dkt. No. 5]

The United States filed a motion for summary judgment in connection with its complaint on February 10, 2005 under sections 523(a)(2) and 523(a)(6) of the Bankruptcy Code. [Adv.Pro.Dkt. Nos. 22-23] On April 19, 2004, the court ruled that the Debtor was precluded from discharging the Judgment under section 523(a)(6) and entered an order sustaining the United States' motion for summary judgment. [Adv.Pro.Dkt. No. 55]

On April 29, 2005, the Debtor moved the court to alter or amend the summary judgment, asserting that the court committed a manifest error of law by entering judgment against the Debtor under section 523(a)(6) because the evidence in the civil action allegedly does not support a finding that the Debtor acted willfully or maliciously against the United States. [Adv.Pro.Dkt. No. 61]  The United States objected to the motion because the Debtor failed to demonstrate that he was entitled to relief under applicable law and because the Court properly determined that the Judgment was entitled to collateral effect under section 523(a)(6). [Adv.Pro.Dkt.No. 66]  The Bankruptcy Court denied the motion for reconsideration on May 25, 2005.  This appeal followed.

## II.    LEGAL STANDARD

The bankruptcy court is the finder of fact in a bankruptcy case. *In re Dow Corning Corp.*, 280 F.3d 648, 656 (6th Cir. 2002) (citing to *In re Caldwell*, 851 F.2d 852, 857 (6th Cir.1988)).  When acting as an appellate court, the district court reviews the bankruptcy court's factual findings under a clearly erroneous standard.  Its conclusions of law are reviewed de novo. *Id*.  Although an order denying a motion for reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure is generally reviewed for an abuse of discretion, the district court also will review an order denying a motion to reconsider an order granting summary judgment de novo.  *See Gage Products Co. v. Henkel Corp.*, 393 F.3d 629, 637 (6th Cir. 2004).

## III.   LEGAL ANALYSIS

Elza is effectively challenging the Bankruptcy Court's grant of summary judgment for the United States, although he is doing so in the roundabout way of challenging the Bankruptcy

Court's denial of a motion for reconsideration. [Record No. 5] Elza's challenge arises under Rule 9023 of the Federal Rules of Bankruptcy Procedure, which incorporates Rule 59(e) of the Federal Rules of Civil Procedure.

As the United States notes, a party seeking reconsideration "must either clearly establish a manifest error of law or must present newly discovered evidence." [Record No. 6], citing *Sault St. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). A manifest error of law is the "wholesale disregard, misapplication, or failure to recognize controlling precedent". *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000). A Rule 59(e) motion is not an opportunity to re-argue the case. *Sault St. Marie Tribe,* 146 F.3d at 374.

Though a direct appeal of the Bankruptcy Court's final decision might be a more appropriate place to raise the issue, the District Court will address the arguments here, as they do raise questions regarding misapplication of controlling precedent, and a misinterpretation of the record in this Court. Also, if Elza's motion is successful, it would vacate the summary judgment and require a trial in the Bankruptcy Court, which may effect debt collection already under way. As such, this Court will address Elza's substantive arguments.

As noted above, in the adversary proceeding in the Bankruptcy Court, the court granted summary judgment for the United States, finding that Elza's debt was nondischargeable under 11 U.S.C. §523(a)(6). The Bankruptcy Court sustained the motion for summary judgment only under §523(a)(6), even though the United States' motion sought summary judgment under both (a)(6) or (a)(2). [Record No. 1, Exh. 2]

The Bankruptcy Court applied the judgment against Elza in this Court[1] to the Bankruptcy Proceeding under principles of *res judicata*. The court then applied *Monsanto Co. v. Trantham (In re Trantham)*, 304 B.R. 298 (B.A.P. 6th Cir. 2004), and found that the effect of the civil judgment was that Elza's conduct was both "willful" and "malicious".[2] As such, it implicitly held that there were no material issues of fact, and granted summary judgment to the United States, finding the debt to be nondischargeable.

Elza challenges each of the bankruptcy court's findings, and each will be addressed in turn. First, this Court must determine what effect, if any, the judgment in the previous civil action has under *res judicata*. Second, the Court must consider whether *Trantham* applies and, if applicable, what effect it has. Third, the Court must consider what effect, if any, the holding in *Markowitz* has in this case. *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999)

### A. False Claims Act judgment as *res judicata*

In 2003, Wendell Elza and Denham & Lewis[3] were found to have violated the False Claims Act. Prior to trial, this Court determined by summary judgment that Elza had violated its contract with the United States by providing coal from non-conforming mines and seams. At trial, a jury determined that Elza violated the False Claims Act by supplying lower quality coal.

---

1  *U.S.A. v. Denham & Lewis, et al*, Case No. 6: 01-504-DCR (E.D. Ky.).

2  Elza was found to have violated the False Claims act by: (1) supplying coal from non-conforming mines and (2) supplying lower quality coal.

3  Hereafter referred to simply as "Elza", as Denham & Lewis was determined to be an alter-ego of Elza for purposes of liability.

In its memorandum in support in the Bankruptcy Court proceeding, upon which that court apparently relied in determining *res judicata* applied, the United States argued that it "showed at trial that the debtor and D&L knowingly supplied coal that did not meet the quality requirements in the DOD contracts". [Adv. Pro. No. 04-6059, U.S. Memorandum in Support] In its brief to this Court, the United States again emphasized "[i]n fact, the jury in the Civil Action specifically found that the Debtor knowingly supplied lower quality coal to the United States." [Record No. 6, pg. 10]

In both cases, the United States specifically argued that Elza "knowingly supplied" a lower quality of coal, apparently to meet §523(a)(6)'s standard of "willful and malicious".[4] The bankruptcy court appears to adopt this rationale (or implicitly adopts by failing to contradict the United States' characterization) when it gave *res judicata* effect to the civil judgment.[5] The problem with this characterization is that it does not take into account the other jury findings in the civil action. When taken as a whole, they make clear that the United States failed to prove that Elza knowingly defrauded the government.

As noted above, prior to trial, this Court determined that Elza had knowingly supplied coal from non-conforming mines in violation of the contract, but made no finding as to the quality of that coal, or any intent by Elza to defraud the government. Following the presentation of evidence, the jury was given three special interrogatories. While the jury found, in

---

4  For a discussion of why the violation must have been knowing, as opposed to reckless or negligent as the United States argues in other sections, *see* discussion of *Markowitz*, subsection C, *infra*.

5  To the extent the bankruptcy court instead relied on a violation of the False Claims Act as *per se* "willful and malicious", *see* discussion of *Trantham*, subsection B, *infra*.

interrogatory two, that Elza had supplied lower quality coal, in interrogatories one and three it rejected allegations that Elza had forged signatures and that he "conspir[ed]. . . to defraud the government". [Record No. 7, Exhibit A]

Because the bankruptcy court granted summary judgment, this evidence must be viewed in the light most favorable to the appellant, with all reasonable inferences therein. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Viewed in this light, the most that can be said is that Elza knowingly breached the contract, and that breach resulted in the shipping of lower quality coal. The jury specifically rejected allegations of forgery and conspiracy to defraud. Given this rejection, the civil verdict alone cannot, as *res judicata*, support a finding that Elza "willfully and maliciously" intended to cause injury to the United States.[6] This is not to say the United States may not be able to present such evidence at a trial, or that it may not be able to demonstrate alternative grounds for nondischargeability. However, absent these alternative grounds by which to sustain the grant of summary judgment, the Bankruptcy Court's determination must be vacated.

### B. Definition of "willful and malicious" -- *Trantham* and *Markowitz*

The other rationale upon which the bankruptcy court may have relied in granting summary judgment (*see* discussion *supra*) is that, as Elza was found to have violated the False Claims Act, he was guilty of fraud *per se*. Because the bankruptcy court specifically did not

---

[6] This is the standard necessary under 523(a)(6) pursuant to *Markowitz*. ("As such, only acts done with the intent to cause injury -- and not merely acts done intentionally -- can cause willful and malicious injury.") *See* discussion in subsection C, *infra*.

address the United States arguments under §523(a)(2)[7], in order to sustain summary judgment under §523(a)(6) the bankruptcy court must have found that a violation of the False Claims Act was itself "willful and malicious" *per se*.

The bankruptcy court cites *Monsanto Co. v. Trantham, supra*, for the proposition that where a pecuniary gain is only possible by a loss to another (a "zero-sum" situation), it constitutes willful action and a conscious ("malicious") disregard of duty to another. The debt that results would therefore be nondischargeable under §523(a)(6). However, a more thorough reading of *Trantham* indicates that its holding is limited by the fact that the action of the debtor (patent infringement) was analogous to an intentional tort, and that a broader reading, taking into account *Markowitz v. Campbell*, narrows the holding to cases of intentional and other analogous torts.

In *Markowitz*, the Sixth Circuit addressed the Supreme Court decision in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), regarding the question of how to apply the term "willful" in §523(a)(6). In *Geiger*, a doctor who "intentionally rendered inadequate medical care by deliberately choosing less effective treatment in order to cut costs" sought to have the debt that resulted from the ensuing malpractice claim discharged.

> The word "willful" in (a)(6) modifies the word "injury," indicating that nondischargeability takes a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. Had Congress meant to exempt debts resulting from unintentionally inflicted injuries, it might have described instead "willful acts that cause injury." Or, Congress might have selected an additional word or words, i.e., "reckless" or "negligent," to modify "injury."

---

7    This section "applies to debts 'for money, property, services, or an extension, renewal, or refinancing of creditor,' which have been obtained by false pretenses or actual fraud." *United States v. WRW Corp.*, 986 F.2d 138, 144 (6th Cir. 1993).

-8-

> Moreover, as the Eighth Circuit observed, the (a)(6) formulation triggers in the lawyer's mind the category "intentional torts," as distinguished from negligent or reckless torts. Intentional torts generally require that the actor intend "the consequences of an act," not simply "the act itself." Restatement (Second) of Torts § 8A, comment a, p. 15 (1964) (emphasis added).

*Id.* at 977 (citations omitted). The Sixth Circuit noted that the Court's reliance on the definition of intentional torts "underscores the close relationship" to the definition of "willful and malicious". *Markowitz*, 190 F.3d at 464. In a footnote, the Sixth Circuit also noted that, for an injury to be willful and malicious, "[one] must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Id.* at 466.

The Bankruptcy Appellate Panel relied on *Markowitz* when it decided *Trantham*, the case which is referenced by the bankruptcy court below. In *Trantham*, the court explained the *Markowitz* footnote, holding:

> the bankruptcy courts in this circuit, in order to find a 'willful' injury under § 523(a)(6), must determine either that (i) the actor desired to cause the consequences of the act or (ii) the actor believed that the given consequences of his act were substantially certain to result from the act.

*Trantham*, 304 B.R. at 307, citing *Markowitz*, 190 F.3d at 464.

In *Trantham*, the injury that was suffered was that of pecuniary loss, similar to the case at bar. In *Trantham*, Trantham (the debtor) did not pay a licensing fee for use of a patent. The bankruptcy court held that debt to be dischargeable because there was insufficient evidence to find that Trantham intended to cause a financial loss to Mansato, the patent holder. *Trantham*, 304 B.R. at 307. The Bankruptcy Appellate Panel overruled the bankruptcy court, finding that while Trantham may not have intended to cause the pecuniary injury, he should have known it was substantially likely to occur, since the only way for him to profit was for Monsato to suffer

the equivalent loss. *Id.* Moreover, a prior case in district court had found evidence that Trantham tried to conceal his infringement through fraud. *Id.*

The Bankruptcy Appellate Panel also noted that the injury which Trantham caused (patent infringement) has been viewed historically as similar to an intentional tort. *Id.*, citing *Carbice Corp. v. Am. Patents Dev. Corp.*, 283 U.S. 27, 33 (1931). The analogy to an intentional tort allows the *Trantham* court to find the debt nondischargeable even though there was only slight evidence as to Trantham's intent to cause the harm, since in an intentional tort the tortfeasor is responsible for injuries which he should have known were substantially likely to occur.

Perhaps because of its reliance on the United States' assertion that Elza was found to have "knowingly" supplied lower quality coal, the bankruptcy court appears to have omitted this final step. In *Trantham*, the injury was failure to pay money due, so that one party's gain could only be had by another's loss. Similarly, the Bankruptcy Panel analogizes it to a bank robbery. *Trantham*, 304 B.R. at 307. The robber may not specifically intend to harm to the bank, but should know that any money he takes to profit himself must come at the bank's expense. The same conclusion cannot be reached in the instant case at this stage of the proceedings.

    **C. Evidence of Elza' Knowledge re: Coal Quality**

When this court's decision is read together with the interrogatories returned by the jury, it cannot be said that Elza was found to liable for any act which can be fairly analogized to an intentional tort. The jury determined the United States failed to prove by a simple preponderance of the evidence that Elza forged signatures, and failed to prove a conspiracy to defraud the government. Even if read in the light most favorable to the government, the most that can be

taken from the verdict is a knowing breach of contract through the use of non-conforming coal, at least some of which was of a lower quality. This distinction – a knowing breach of contract versus knowingly supplying a lower quality of coal – is the crucial distinction. Had the United States proved that Elza knowingly supplied lower quality coal but charged them for the higher quality, the analogy to an intentional tort would be readily available. In that situation, the only way for Elza to make money would be for the United States to suffer harm.

However, in the civil trial, this Court found only that Elza knowingly supplied coal from a different mine, and the jury properly concluded that it was of lower quality. Had the coal which Elza obtained from the other mine been of substantially similar quality as that of the conforming coal, it is entirely possible the United States would not have suffered damages. If that substantially similar coal were less expensive than that contracted for, Elza could have profited without the United States suffering a loss. Even had Elza supplied the lower quality coal as the result of reckless or negligent behavior, it would not be "willful and malicious" so long as the requisite level of intent (knowledge or purpose) was lacking.

This Court need not decide which scenario is more plausible. What is significant is that the alternative scenario, based on the evidence available at summary judgment, is equally supported when the evidence is considered in the light most favorable to Elza. Thus, this Court must conclude that summary judgment was premature as to nondischargeability under §523(a)(6). As this was the ground on which judgment was granted, the Court need not address possible claims of nondischargeability under (a)(2), (4)[8] or even (a)(7)[9]. At trial, the United

---

[8] This section "applies to debts 'for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny' and was intended to reach 'debts arising from the debtor's acquisition or use of


States may be able to prove sufficient knowledge to sustain a ruling under §523(a)(6). At this time, however, such evidence is not yet present in the record. As such, the decision to deny reconsideration must therefore be overturned, with the adversary case to proceed in bankruptcy court consistent with this opinion.

**IV.   CONCLUSION**

For the reasons discussed herein, it is hereby **ORDERED** as follows:

(1)   Wendell Elza's Motion for Order to Vacate, Alter or Amend is **GRANTED** [Record No. 1]; and

(2)   Summary Judgment for the United States in Adversary Proceeding 04-6059 is **VACATED**.

This 5th day of January, 2006.



Signed By:
*Danny C. Reeves* DCR
United States District Judge

---

property that is not the debtor's'." *Id.* (citations omitted).

9   Under this section, "liability for [] civil penalties constitutes a non-dischargeable debt" where debt is from "a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss." *Id.*